Okay, let's start in 19-5089, Woods v. Ross Dress For Less. Are you ready for me to proceed? Yes, sir. Mr. Travis, yes. Yes, I'm Rex Travis. I'm the attorney for the appellant. Please, the court, we have two issues before the court. One being the court's ruling on a motion to remand what has been referred to in the briefs as a snap removal. And the second and principal issue being whether the court erred in sustaining a motion summary judgment on the basis of the open and obvious defect rule that applied in Oklahoma until very recent time. We can very quickly dispose, I think, of the first one. I will candidly suggest to the court that Mr. Applegate will make a good argument in support of his removal, and the court could rule, I think, either way on that without great complaint on my part. The problem, of course, is when the court enacted the statute which enables someone to make a removal within 30 days, we developed the so-called non-forum defendant rule, and that requires that the court take into consideration people properly joined and served. Oklahoma has a statute which gives the plaintiff 180 days in which to serve, but the federal removal statutes give the defendant only 30 days. So Mr. Applegate will argue with great persuasiveness that when your plaintiff filed and did not serve the resident within the 30 days, they should be able to remove within 30 days. And he well may be right about that, although the district courts have somewhat disputed that and you find rulings going both ways. What I don't want to do is get bogged down in arguing the removal issue and eat up much of my 15 minutes arguing that because I strongly suspect I'm going to lose that. I really want us to move on and would like to talk about the court's ruling based on the open and obvious defense. Counsel, I realize I haven't given you the three minutes yet. This is Judge Hartz, but jurisdictional matters can be important. Can you tell me what's the status of Defendant Butler? Judge, I was not in the case when the suit was filed. I came into the case only after— Well, Judge, is Megan Butler still a party to the case? I didn't see any ruling by the district court dismissing Megan Butler. No, she's not been dismissed, but she's not been served, and the 180 days within which to serve her has passed. Yes, but the Supreme Court has said you can't dismiss somebody without notifying the plaintiff. There's no order dismissing. I'm curious why we have appellate jurisdiction. There's not a final judgment here because Megan Butler has not been disposed of. There's a summary judgment granted on behalf of Ross Dress for Less, but there's another party who's still in the case, and I just wanted to make sure I haven't missed something here. Is there an order dismissing Megan Butler? Judge Hartz, to my knowledge, there is not. I do not believe that has been done. I think Judge Kern proceeded on the assumption that once the 180 days passed without service on her, that took her out of the lawsuit. Well, it could have. It could have. The Supreme Court has said on notice to the plaintiff you can dismiss the defendant without prejudice, but at this point there's no order dismissing. Maybe right, and if you are, then what's going to happen is you're going to reverse on that issue and remand it simply for the court to enter an order dismissing the fellow Oklahoma citizen, and then we're going to go through this and be back in a year arguing it again. We sometimes just remand and then bring the case back, but I just wanted to make sure because at this point we don't have appellate jurisdiction. I think you're correct. Then on removal, before you can remove, you argued a lot about snap removal, but there's a more fundamental problem. You can't remove under 1441 unless it's a case that otherwise the district court would have original jurisdiction over, and there's no original jurisdiction under 1332 unless there's complete diversity of citizenship, and you've got a plaintiff from Oklahoma and Megan Butler is still a party. There's nothing in 1332 that talks about all served parties must be diverse, but there wasn't jurisdiction under 1332, so the removal was incorrect to start with. I know you've kind of conceded that, but it seems to me that this was an improperly removed case and we don't have appellate jurisdiction to decide that anyway, and then there's the question of what do we do if it was improperly removed. We may need to spend some time on the merits and the jurisdictional issues also. Judge Mathison, do you have some questions? I do have a question on the removal issue. If this court were to reverse on the removal issue, and that assumes we get past the appellate jurisdiction question in the first place, but if we were to reverse on the removal issue, what is the appropriate remedy? I think it would be sort of what I just suggested, not the very best remedy from a standpoint of judicial economy, but it would be to reverse and remand for the purpose of the district court dismissing the resident citizen of Oklahoma who is a defendant, and then we come back and take up the merits, which gets us into the second issue, that is the open and obvious issue. But I think that's technically probably what we would have to do. What I would think the court would want ultimately to do would be to maybe utilize this case to put forth a system whereby the defendant can resolve its concern about only having 30 days to remove by suggesting that if you have a sued but unserved defendant, then the removing defendant must wait until, say, 15 days have gone by, and then within the 20 days, file a removal. But the fact is they did that. They removed very close to the 30 days, I think, on the 28th day. And I'm suggesting we should, amongst all of us, be able to figure out a way that we don't have to remand simply for the purpose of dismissing that defendant who has not been served within 180 days, and then either starting over, the court brings it back just for argument on the second issue. That just all does not make much sense to me, although I'm sensitive to the concept that you've got to have appellate jurisdiction. Judge Carson, do you have any questions? No, I don't have any questions. Thank you. Let me follow up a little bit more on this removal issue. There are two issues that I believe you conflated, Mr. Travis. Maybe it's my misunderstanding. Say we do have appellate jurisdiction. Say the manager had been dismissed, as should have happened. There's still a question about whether the removal was proper. And what I was saying earlier is removal wasn't proper, regardless of what the removal statute provided for service of parties. There still wasn't jurisdiction because there was never original jurisdiction. The district court does not have jurisdiction over a case. When there is not complete diversity. And at the time of the removal, there wasn't complete diversity. In fact, there still isn't complete diversity because you have a plaintiff and a defendant who are citizens of the same state. In that circumstance, you've got a problem. Now, the Supreme Court in Caterpillar said that in that circumstance, if the case is already disposed of, you've already got a summary judgment, or in that case it was a jury verdict, then if the court, by the time it entered judgment, did have jurisdiction, there was complete diversity, then the efficient thing to do is keep the case in federal court, dispose of it. But if, as you're arguing, the summary judgment should be reversed under Oklahoma tort law, then the remedy would be to send it back to the district court and have the district court send it back to state court. This circuit did that once a while back, about 20 years ago. And that seems like the proper procedure. Well, and I think if your honor is correct that there is no jurisdiction under 1332, then what would be an appropriate resolution would be to remand with directions, to reverse and send it back to the district court with directions to remand. Well, no. It certainly is a solution. Because if it's remanded, if we give the district court the opportunity to enter final judgment in this case by dismissing without prejudice the unserved defendant, at that point there is diversity. And if at that point the judge enters a judgment in favor of defendant Ross Dress for Less, then under Caterpillar we would not send it back to the state court if we agree that the judgment was correctly entered in favor of Ross Dress for Less. If, however, we do what you want and reverse the summary judgment, then we would not send it back to the federal court for it to decide the case at trial or whatever further proceedings are conducted. At that point, we would say this case was improperly removed. It was objected to at the time of removal and the proper remedy. At that point, it's to send the case back to state court. But that's only if we agree with you that summary judgment was improper. Let me suggest to the court that at the time that Judge Kern entered this order, he thought, as did I, that the fact that 180 days had passed with no service meant that as a matter of law the case was dismissed as to the unserved defendant. That's not the law. That's not the law as I understand it. The Supreme Court has since reversed that position. No, the Supreme Court long ago said that if someone isn't served, then at that point on motion from the defendant or on notice by the district court, the district court can dismiss that defendant without prejudice. But there wasn't a motion by defendant to dismiss. There wasn't notice by the district court of an intent to dismiss. And most importantly, there's no order or judgment dismissing the defendant. What I'm telling the court and suggesting to the court is that as a matter of state law, that state law has changed since Judge Kern made his decision. And the Oklahoma Supreme Court has since held that the failure to serve within 180 days does not have the legal effect of dismissing. And that's why I said I think Judge Kern thought accurately that the case was dismissed. I thought the same thing, and we were both wrong. Well, even under the former Oklahoma law, I would think that the federal rule would prevail in that circumstance on dismissal without prejudice. But we've taken a long time on this, and I'm going to give you time to go over the merits now. Okay. Thank you, Your Honor. Please take a seat. The case turns on whether Martinez v. Angel Exploration Company is controlling. It appears to me that it is a white horse case. Martinez deals with what is the effect of a case called, sort of confusingly for this case, Wood v. Mercedes Benz. And I think what happened was that my friend Judge Kern simply failed to very carefully read this court's Martinez v. Angel Exploration case, where the court two or three times very carefully says that the Oklahoma law in the wake of Wood v. Mercedes Benz is that even when the invitee is injured by an open and obvious condition, the landowner may still have a duty to warn or otherwise protect the invitee from the dangerous condition if the increase was reasonably foreseeable. That's from 798 Fed Third at 975 in the case. They go on two or three other times to say Wood appears to represent a significant shift in Oklahoma premises liability law, and to say on page 976, a review of the legal literature also reveals that Wood aligns Oklahoma with an emerging majority of states to consider the open and obvious doctrine. You may continue, Counsel. Thank you. Mr. Wyman, give an additional ten minutes, please. Thank you, Your Honor. That's our case in a nutshell. There's a case, which I'm sure Your Honors are familiar, W.A.N.K.I.E.R. v. Crown Equipment Corporation at 353 Fed Third, 862 at 867, where this court says, following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law. Martinez clearly resolves this issue, and it is that this is not an open and obvious defect which would preclude recovery by the plaintiff. When you get even beyond that to the point where the court actually observes in its order that in the seven or eight minutes of surveillance tape which they have there, there were 58 people passed near this knee-level sign, and 58 people passed it and did not trip on it, but it also shows, that film does, that three people tripped on it in that seven or eight minutes. Fortunately, two of them recovered without serious injury. This lady fell and broke her leg. That's just not the standard of proof that's required for a court to grant summary judgment on the basis of open and obvious defect, even under the law prior to the Mercedes-Benz case and this court's adoption of it and elucidation about it in the Martinez case. With that, I'd like to reserve five minutes, if I may, and turn it over to Mr. Applegate. Judge Matheson, do you have any questions at this time? No, I don't. Thank you. Judge Carson? No, thank you. Okay. Mr. Applegate? I'm here, Your Honor. This is Robert Applegate, counsel for Appellee Ross, dressed for less. May it please the court. This matter was filed in state court against Ross and Butler, who we've discussed was alleged to be an Oklahoma resident citizen. At no time has summons ever been issued for Butler. She's never been served. She was deposed. There was never any attempt to serve. The district court's order granting or denying the motion to remand does not have any language saying that she was dismissed by operation of law. Rather, the court addressed the issue that she was never properly joined and served, language straight from section 1441, sub a, sub 2. That was the basis. It wasn't that she was dismissed by operation of law, but that she was nothing more than a nominal party. We're getting kind of back in the fraudulent joinder argument. Well, at this point, there's been no dismissal of her with or without prejudice. Isn't that correct? That is correct, and that was going to be my next comment, that I realize that this leads us right back into your discussion on the court's appellate jurisdiction. But the court's ruling on the issue of remand did not say that she was dismissed by operation of law. Rather, just the fact that she was more of a nominal party. She was never served under section 1441, sub a, sub 2, talking about properly joined and served. With that, I'm going to address quickly as I can the summary judgment. There's no per se rule that the defense of open and obvious be determined by a jury. It's measured by an objective standard. Mr. Travis has suggested if it still applies. The case that he talks about would, made clear that it still was not abrogating that defense. The facts in this matter are largely undisputed. The store had placed a large blue and white sign out front indicating it was hiring. A plaintiff admits she wasn't paying attention and tripped over it. And it also remains undisputed that Roth had no actual or constructive knowledge that the sign had fallen. So rather, what plaintiff is trying to do is trying to align this case applying an exception to the open and obvious defense in Wood. Wood even recognized that it was a narrow exception and an atypical case. Where even if the condition is open and obvious, the property owner may still be held liable in cases involving foreseeability. Specifically, if it was foreseeable that the plaintiff invitee would be proceeding through the danger in furtherance of his or her employment. Wood, it was a caterer who had to go inside a car dealership and go over ice that had accumulated because of some broken sprinklers. In our case, this exception doesn't apply. I mean, we have the standard case where you've got the sign out front, a plaintiff walking up who admits she wasn't paying attention and she trips over it. Neither do we have a case involving any distraction. Counsel, was she not looking? I thought she was looking at the display in the window. Well, the testimony that she provided that was undisputed was when she was asked why she didn't see it, the only thing that she said that was preventing it was she was looking up to see where the entrance was. That's the only thing that she could say. She wasn't looking down. She was looking up. She'd also included testimony suggesting she was window shopping. But, again, we've got a big blue and white sign that's out front that we didn't have any issue. And, again, even if we're talking about a distraction, we don't have strict liability. I mean, there's got to be some reasonable time for the store owner to have notice of the same. The only time we don't really get into that issue is when you're talking about wood and this idea of foreseeability in the cases where you have employees or wood, a caterer who has to go in. Counsel, this is Judge Hartz. Did you argue that causation or the absence of negligence issue in district court? Did the district court resolve that issue? On the issue? You're saying even if there was a distraction and so an obvious defense doesn't apply, you're pointing out that still there had to be negligence on the part of Ross for there to be liability. Did you argue that in district court? That was argued in the briefing at district court, yes, Your Honor. Go ahead. I was just saying that the district court just relied on the fact that it was open and obvious and that the evidence presented in the case was undisputed that it was open and obvious. Okay. And did you argue in your briefs in this court an alternative ground for affirmance would be absence of negligence? I believe we had mentioned the fact that the evidence below had supported that there was no actual or constructive knowledge on behalf of Ross. I think being the focus, for the most part, with the way that the issue had been framed by appellant was dealt with. The open and obvious and whether the would exception even applies. Judge Matheson, do you have any questions? Yes. Counsel, I'd like to back up to the removal issue and ask you to clarify, are you contending that Ms. Butler was improperly joined or fraudulently joined? That was an argument below, yes, Your Honor. I understand that, but I didn't see anything about that in your appellate brief, so are you making that argument to this court? Yes, Your Honor, it was. I thought we had included that in our brief, particularly because they had brought it up in terms of you can name a store manager as a party. And our argument was, well, there's no point. There's no allegations that were presented against her that she was acting outside. Even if you were to get to trial with both of them, you couldn't get a double recovery because there's no allegations that she was outside the scope of employment. Just because she can name Roth and there's case law suggesting they can name the manager, there's not going to be a double recovery. All right, I'll look at your brief again. I just wanted to hear whether you are making that argument. You would say she was fraudulently joined. That was one of the arguments that we have presented, yes. To this court? I don't know that it was as clear in the briefing to this court, although that argument is included, if that makes sense. Because there was an argument by appellant in their brief-in-chief that they can name her, and we addressed it saying, well, it doesn't matter because if you proceed to trial, it doesn't matter if you've included her. Yes, there's a case that says you can sue a store manager, but there's no point in this case because you've named Roth, you haven't included the argument that she was outside the scope of her employment or that she did something individually. Rather, you're just proceeding on the fact that the store, the owner, had put a sign out front that they should have warned about. Thank you. Thank you, Judge. Judge Carson? I do. Thank you, Judge Hertz. My question goes back. Judge Hertz was asking your opposing counsel about whether we had any jurisdiction at all as a result of the unserved defendant not being dismissed, and I was just wondering if you were aware of any case law in our circuit or any other circuit that would say that you still had a final judgment even if you had an unserved defendant remaining at the district court level. Judge Carson, I am not aware of any such authority in this circuit. Anything else? That's all I have, Judge Hertz. I'm sorry. I didn't hear that. Judge Carson? I was just saying that's all I have. Okay. Let me ask you a question, counsel. This is Judge Hertz. There's a video showing three people tripping over the sign. Is that correct? There is. There's a video that was submitted as a supplemental appendix. It's seven or eight minutes of footage. Aside from the appellant plaintiff in this case, there were two others. There were not people that one person just kind of backed and hit it with their foot and neither of them fell. It wasn't anything. Nobody really stumbled. It's not quite as much of an incident as the plaintiff might portray. I mean, there were two other people, one of them kind of hit it as they were walking. One lady was chasing her son or child out and just kind of backed up and hit it. Another one was a guy was walking out and, as the district court noted in this footnote, was looking at something else and just, you know, tapped it. You know, nobody is falling, stumbling over this sign except for one. What does the video show that Ms. Woods was doing as she approached? Can you tell where she's looking as she approaches the fallen sign? Not from the video. Not that clear. Would you say she did say in part at one point that she was window shopping? You seem to say she was looking for the entrance and then you said something about some evidence of window shopping. Yes. During her deposition, and this was in some of the unconverted facts, she had testified to two things. The first was that she did not see the sign before she fell, and the only thing preventing her from seeing the sign before she fell was, quote, me looking up to see where the entrance was. That was the only thing that I could say. And then, you know, shortly thereafter during the deposition when she was asked if anything prohibited her from seeing the sign, she testified, I wasn't looking down, I was looking up. And then the last little section on that, she further testified that she was window shopping and not looking for the Ross door as she approached the door in the sign. Would she have been window shopping at the Ross store or a different store? She's approaching from, she was not, it would have been the Ross store, but this is a freestanding store. So as she's approaching from, what she says is as she's approaching from the parking lot that she, one, was looking up, was looking to see where the door was located, and then two, she threw in that she was window shopping. And why would that not be enough to overcome the open and obvious defense? That she wasn't paying attention. Now, stores, that's part of their advertising is what they put in their windows. They want people to look at the windows. They want people to be, to put it crudely, distracted and look at the windows rather than going along the sidewalk looking for pennies on the sidewalk. They want them to look at the windows. Why would that not be a distraction under Oklahoma law? Well, I think in looking at the video, it's kind of a good example because the sign is right in the middle between doors that open for ingress and doors that open for egress. And so as you're approaching it, it's not like it was placed in front of an area where people would be window shopping. I just don't think the facts of this case really align it with such as a distraction. Okay. So if she had been window shopping, she would have turned her attention to looking in front of her by the time she got to the sign is what you're saying? I think the video kind of makes that clear. Counsel, do you agree that if the video is ambiguous as to that point, that her testimony that she was window shopping could create an issue of fact? I think it's an objective standard. The open and obvious defense is an objective standard under Oklahoma law. And looking at it objectively, just as the district court had noted, it's open and obvious. I mean, it's a blue and white sign right in between the doors that slide open for entering and exiting the store. It is knocked down. It's not standing up where you would notice it as well. It was knocked down. That's correct, Judge. And there's a ramp leading up to the store that's painted blue also. That's correct. But there's at least, if you kind of look at the video, there's at least five or more feet between where the blue ramp ends and stark white and blue sign is, which is very close to the middle of the entrance. Right. Again, I think if you look at it from the objective standpoint and especially from the video, which I know the district court relied heavily on, it's open and obvious. I mean, there is no doubt. There's nothing concealed about it. Visibility is not an issue. Is it a fair representation of the video that when she walked up, she may have been looking to go in a door used for egress and realized her mistake and then looked up over at the door for ingress? In looking at the video, I think that would be a fair representation. I mean, we can't step into her mind, but... I think that's your three-minute warning. Judge, that was his total time. Oh, total time. That's the earlier one. Well, Judge Carson, did you have further questions? I don't think so. Judge Matheson? None here. Well, this is Judge Hartz. I do have one question. You keep saying open and obvious and that settles it, but does it under Oklahoma law, even if it's open and obvious, if there is a distraction, particularly a distraction created by the property owner, then that can overcome the open and obvious defense. Am I wrong about that? Judge, you are not. I think that Oklahoma law would support that there would be two exceptions, one of which would be the Wood case and then a distraction. But in looking at it objectively, in this case, I don't think we can get there. And I think that's exactly what the district court correctly held. That the evidence would not support a claim of distraction. That the evidence presented, the largely uncontroverted evidence and a video that can be applied objectively, that we do not have that situation. Okay. Thank you, counsel. And I... Mr. Travis, I believe, has some more time. I do, Your Honor, please. And I can be very brief, I think. We have a case in Oklahoma on the exact point that counsel was talking about. It's the Hanson v. Academy sporting goods case, talked about on page 22 of our brief. That's a very sort of famous case in Oklahoma. Because it involves a lady who tripped over a boat trailer tongue. And she was looking up at an inflatable shark that Academy had put up as part of their display. We commonly call that the inflatable shark case. You know, counsel has very predictably tried to go back and dissect the Wood v. Mercedes-Benz case. That's not what this court needs to be doing. This court doesn't have the leeway to do that under the Wencure case. This court has to look at what Martinez says. And what Martinez says is that the Oklahoma law, as the Martinez court interprets Wood, versus Mercedes-Benz, says, even where the invitee was injured by an open and obvious condition, the landowner may still have a duty to warrant or otherwise protect the invitee from the dangerous condition which was reasonably foreseeable to the landowner. And here, this is not something that just existed because somebody spilled a Coke and the store might or might not have known about it. They put the sign there. And the employee who put the sign there was acting under the direction of the store manager. And we've cited in our brief to this court the J.C. Penney v. Barrientos case which says that justifies joinder of the manager. What we need to do is imaginatively figure out some way that we can resolve the jurisdictional question whether it involves an interim remand to the trial court for the limited purpose of dismissing the unserved defendant and then bring it back to the Tenth Circuit, which doesn't make too much sense. I'm not clear about what the court can reverse on the open and obvious defense issue and simply remand and direct the court to dismiss the... Well, let me... If counsel wants to submit supplemental authority on the jurisdictional issues and how we should proceed, you can submit 28 J letters in 10 days. Okay. I don't... There are many different areas, counsel. Yeah. The opposing counsel said if we look at the video, it's clear that she was not distracted by anything when she tripped over the sign, the fallen sign. What is your account of what the video shows? Does it show that by the time she was getting close to the fallen sign, she could not have been window shopping? Is that apparent from the video? To me, not at all, Judge. Your Honors can certainly look at the video, which is part of the record, and make that determination, and I suspect... It sounds like maybe some of you have, but no, that's just not true. You certainly can't tell from the video whether she's looking at the store or at the store window, and she's testified that she was looking at both from time to time. That's all I have. Thank you, counsel. These will be submitted, and counsel are excused.